UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ARANTZA ESPINOZA,                                    CASE NO.

      Plaintiff,

vs.

PANDORA JEWELRY, LLC.,
A Foreign Limited Liability Company,
D/B/A PANDORA

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY AND
## INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND

Plaintiff, ARANTZA ESPINOZA, through undersigned counsel, sues Defendant, PANDORA JEWELRY, LLC., a Foreign Limited Liability Company, d/b/a PANDORA (hereinafter referred to as "PANDORA"), for declaratory and injunctive relief, and damages, and alleges as follows:

1)      This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

2)      This action is also brought pursuant to 28 C.F.R. Part 36.

3)      This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

4)      Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5)      Plaintiff is sui juris, and she is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

6)      Defendant, PANDORA, is a foreign limited liability company authorized to do business and doing business in the State of Florida.

7)      Defendant, PANDORA, is a company that sells charms, bracelets, rings, earrings, necklaces, and pendants. There is a retail location in Miami-Dade County.

8)      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase a heart necklace.

10)     Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11)     The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12)     The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13)     Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

14)     Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15)     At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision.

16)     Plaintiff's visual impairment interferes with her day-to-day activities and causes limitations in visualizing their environment.  As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

17)    Plaintiff regularly uses the computer, but she needs the assistance of special software for visually impaired persons. The software that she uses is screen reader software that is readily available commercially.

18)    Defendant is a private entity which owns and operates retail locations.  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19)    Defendant's website is a place of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar stores.  The public is able to, among other things, view the products available at defendant's locations, purchase charms, bracelets, rings, earrings, necklaces, and pendants through defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, join the pandora club and learn the story behind Defendant's brand, and join the student discount program.

20)    Since the Defendant's website is a public accommodation, it must comply with the requirements of the ADA.  The website cannot discriminate against individuals with disabilities.

21)    Plaintiff is a customer of Defendant who is and was interested in purchasing a necklace through Defendant's website and at Defendant's stores and visiting Defendant's brick and mortar locations.

22)    Plaintiff is not able to visit the physical locations without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's website for delivery to her home is important to her as an alternative when she is not able to visit the Defendant's stores.

23)    The website also services Defendant's physical stores by providing information on its pandora club, learn the story behind Defendant's brand, and student discount program, and other information that Defendant is interested in communicating to its customers about its physical locations.

24)    Since the website allows the public the ability to view the products available at defendant's locations, purchase charms, bracelets, rings, earrings, necklaces, and pendants, through defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, join the pandora club and learn the story behind Defendant's brand, and join the student discount program, the website is an extension of, and gateway to, Defendant's physical stores.  By this nexus, the website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar stores.

25)    Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant at its physical stores, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, join the pandora club and learn the story behind Defendant's brand, and join the student discount program, the website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E).  As such, the website, as an intangible service, privilege and advantage of Defendant's brick and mortar locations, must be fully accessible and in compliance with the ADA, must not discriminate against individuals with disabilities, and must not deny full and equal enjoyment of the same services, privileges and advantages afforded to the general public both online and at the physical locations.

26)     At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://us.pandora.net/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, and Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA.

27)     Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical stores, and purchase Defendant's merchandise, sign up for Defendant's newsletter and create an account through the website and at Defendant's physical stores.

28)     The opportunity to shop Defendant's merchandise from her home is an important accommodation for Plaintiff because traveling outside of the home as a visually disabled individual is often a difficult, hazardous, frustrating, confusing, and frightening experience.  Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

29)     Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices. Plaintiff may look at several dozens of sites to compare features and prices.

30)     During the months of September and October 2022, Plaintiff attempted on several occasions to utilize the website to browse through the merchandise to educate herself as to the merchandise and with the intent to make a purchase through the website or at one of Defendant's physical stores.

31)     Places of public accommodation are not just brick-and-mortar structures.  The United States Department of Justice and the binding case law increasingly recognize that private entities

are providing goods and services to the public through websites that operate as places of public accommodation under Title III.

32) Defendant is required to make reasonable accommodations to its websites for individuals with disabilities to allow them to participate in web-based promotions and obtain goods or services via the Internet just as sighted persons are able to do.

33) Plaintiff utilized Chrome Vox ("Screen Reader Software") to attempt to purchase jewelry on Defendant's website. However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

34) A person who can see can enjoy the benefits and privileges provided by Defendant's website that include, but are not limited to viewing the products available at defendant's locations, purchasing charms, bracelets, rings, earrings, necklaces, and pendants, through defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, join the pandora club and learn the story behind Defendant's brand, and join the student discount programs.

35) A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's website and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

36) The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

37) Defendant's website does in fact fail the following WCAG 2.0-AA Compliance standards and it does not provide sufficient alternatives to serve the equivalent purpose:

System settings while doing the review:

Operating system: Windows 10

Browser: Google Chrome v. 106.0.5249.119

Screen Reader: NVDA v. 2022.3

List of a few of the violations encountered:

Violation: The options within the 'Combo Box' for selecting what to sort search results by all have a blank audible label. They should work like this example shown on this page. In instances like this when the options presented in the dropdown are unfamiliar to the user, not having a descriptive label for them makes selecting the desired option difficult.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/twzggwmmnu0mgie/2022_10_12_132432_01.mp4?dl=0

Violation: When a user selects a metal different from the one that's currently selected, the page reloads, and the focus order shifts to the top of the page. This is not the expected sequence and focus order.

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/badvpq9hgrtzhgd/2022_10_12_132432_02.mp4?dl=0

Violation: There is no audible label indicating the metal that is currently selected.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/9cxnjcmq6ea43r1/2022_10_12_132432_03.mp4?dl=0

Violation: Once the Need Sizing Help link is activated, the focus shifts to the sizing table but there is no audible label for the information contained within it.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/rusd5szb025pg3x/2022_10_12_132432_04.mp4?dl=0

Violation: There is no audible context given to the Learn More button corresponding to the klarna payment option. It should have an audible explanation like the afterpay option below it.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/bxkh7ef7nrps242/2022_10_12_132432_05.mp4?dl=0

Violation: There is no audible label indicating that an item has been added successfully to the shopping cart.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/fkuptaeiix2z1ph/2022_10_12_132432_06.mp4?dl=0

Violation: When a user is trying to log in to their account and there's an input error with the email address, the error message is not identified in an audible format.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/h11bag7fe2qyp7x/2022_10_12_132432_07.mp4?dl=0

Violation: There is no audible context given to the Add link corresponding to Coupon Code or Gift Packaging Options. It should have an audible explanation about what is it that the user would be adding by clicking on it.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/rqlghjyue6b3ep0/2022_10_12_132432_08.mp4?dl=0

Violation: When a user enters an incorrect or invalid coupon code, the error message is not identified in an audible format.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/qn7xl4tf9306zpe/2022_10_12_132432_09.mp4?dl=0

Violation: The options within the 'Combo Box' for selecting a State all have a blank audible label. They should work like this example shown on this page. In instances like this when the options presented in the dropdown are unfamiliar to the user, not having a descriptive label for them makes selecting the desired option difficult.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/rzu4engqd3ri1mn/2022_10_12_132432_10.mp4?dl=0


Violation: When a user enters incorrect or invalid information into one of the Shipping Details form fields (e.g., phone number), the error message is not identified in an audible format.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/9xqsk614rtv34zw/2022_10_12_132432_11.mp4?dl=0


Violation: There is no audible explanation given for what the afterpay interest free payments will be once they have been calculated.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/79o8dfpxvd71q3v/2022_10_12_132432_12.mp4?dl=0


Violation: When trying to enter the credit card number using the keyboard, instead of registering the numbers being entered, (e.g., 4 or 2) the input is processed as a request for a heading, prompting an audible label of no next heading at level 4 or no next heading at level 2.

Applicable WCAG 2.1 Standard at Issue: Standard 2.1.1 Keyboard (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/r2g2hwsd1qn1w3w/2022_10_12_132432_13.mp4?dl=0

38)     Furthermore, Defendant's website does not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who she can contact for assistance, questions, or concerns.

39)     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40)     On information and belief, Defendant is, and at all times has been, aware of the barriers to its website which prevent individuals with disabilities who are visually impaired from comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

41)     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its website.

42)     Notice to Defendant is not required because of Defendant's failure to cure the violations.

43)     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

44)     Plaintiff has retained the undersigned attorneys to represent her in this case, and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

45)     Plaintiff realleges paragraphs 1 through 44 as if set forth fully herein.

46)   Defendant owns and operates the https://us.pandora.net/ website, and is a public accommodation subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

47)   Defendant's website is inaccessible to persons with disabilities like the Plaintiff, who is visually impaired.  Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

48)   Defendant's website is not in compliance with the ADA.

49)   Defendant has made no reasonable accommodation for Plaintiff's disability.

50)   A cursory review of a portion of the Defendant's website revealed that the website is not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's website, including:

System settings while doing the review:

Operating system: Windows 10

Browser: Google Chrome v. 106.0.5249.119

Screen Reader: NVDA v. 2022.3

List of a few of the violations encountered:

Violation: The options within the 'Combo Box' for selecting what to sort search results by all have a blank audible label. They should work like this underline example shown on this page. In instances like this when the options presented in the dropdown are unfamiliar to the user, not having a descriptive label for them makes selecting the desired option difficult. Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A). Screen Capture Evidence:

https://www.dropbox.com/s/twzggwmmnu0mgie/2022_10_12_132432_01.mp4?dl=0

Violation: When a user selects a metal different from the one that's currently selected, the page reloads, and the focus order shifts to the top of the page. This is not the expected sequence and focus order.

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/badvpq9hgrtzhgd/2022_10_12_132432_02.mp4?dl=0

Violation: There is no audible label indicating the metal that is currently selected.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/9cxnjcmq6ea43r1/2022_10_12_132432_03.mp4?dl=0

Violation: Once the Need Sizing Help link is activated, the focus shifts to the sizing table but there is no audible label for the information contained within it.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/rusd5szb025pg3x/2022_10_12_132432_04.mp4?dl=0

Violation: There is no audible context given to the Learn More button corresponding to the klarna payment option. It should have an audible explanation like the afterpay option below it.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/bxkh7ef7nrps242/2022_10_12_132432_05.mp4?dl=0

Violation: There is no audible label indicating that an item has been added successfully to the shopping cart.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/fkuptaeiix2z1ph/2022_10_12_132432_06.mp4?dl=0

Violation: When a user is trying to log in to their account and there's an input error with the email address, the error message is not identified in an audible format.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/h11bag7fe2qyp7x/2022_10_12_132432_07.mp4?dl=0

Violation: There is no audible context given to the Add link corresponding to Coupon Code or Gift Packaging Options. It should have an audible explanation about what is it that the user would be adding by clicking on it.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/rqlghjyue6b3ep0/2022_10_12_132432_08.mp4?dl=0

Violation: When a user enters an incorrect or invalid coupon code, the error message is not identified in an audible format.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/qn7xl4tf9306zpe/2022_10_12_132432_09.mp4?dl=0


Violation: The options within the 'Combo Box' for selecting a State all have a blank audible label. They should work like this example shown on this page. In instances like this when the options presented in the dropdown are unfamiliar to the user, not having a descriptive label for them makes selecting the desired option difficult.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/rzu4engqd3ri1mn/2022_10_12_132432_10.mp4?dl=0


Violation: When a user enters incorrect or invalid information into one of the Shipping Details form fields (e.g., phone number), the error message is not identified in an audible format.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/9xqsk614rtv34zw/2022_10_12_132432_11.mp4?dl=0


Violation: There is no audible explanation given for what the afterpay interest free payments will be once they have been calculated.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/79o8dfpxvd71q3v/2022_10_12_132432_12.mp4?dl=0

Violation: When trying to enter the credit card number using the keyboard, instead of registering the numbers being entered, (e.g., 4 or 2) the input is processed as a request for a heading, prompting an audible label of no next heading at level 4 or no next heading at level 2.

Applicable WCAG 2.1 Standard at Issue: Standard 2.1.1 Keyboard (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/r2g2hwsd1qn1w3w/2022_10_12_132432_13.mp4?dl=0

51)    Due to Defendant's failure to provide an ADA compliant website, the Plaintiff has been injured since she has been denied full access to Defendant's website.

52)    As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A.         A declaration that Defendant's website is in violation of the ADA;

B.          An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C.          An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

D.          An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E.          An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.           An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

G.          An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

H.          An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.           An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any

applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

J.        An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

K.        An award to Plaintiff of her reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.



[1]

## **COUNT II – TRESPASS**

53)     Plaintiff realleges paragraphs 1 through 44 as if set forth herein.

54)     Defendant's website contains software analytics.   Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

55)     Plaintiff never consented to and was unaware that Defendant's website was placing software on her computer.

56)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on her personal computer, which was done without her knowledge and consent.

57)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of her computer.

58)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

PANDORA JEWELRY Cookie Policy

Effective Date/Last Updated: January 1st, 2020

Unless otherwise expressly stated, capitalized terms in this Notice have the same meaning as defined in the  Privacy Policy.

Scope of Notice

This Cookie Policy supplements the information contained in the  Privacy Policy by explaining how we and our business partners and services providers use cookies and related technologies in the course of managing and providing our online services and our communications to you. It explains what these technologies are and why we use them, as well as your rights to control our use of them.

In some cases, we may use cookies and related technologies described in this Cookie Policy to collect personal information, or to collect information that becomes personal information if we combine it with other information. For more details about how we process your personal information, please review the  Privacy Policy.

What Are Cookies and Related Technologies

Cookies are small data files that are stored on your computer that allow us and our third-party partners and providers to collect certain information about your interactions with our email communications, websites and other online services.  We and our third-party partners and providers may also use other, related technologies to collect this information, such as web beacons, pixels, embedded scripts, location-identifying technologies and logging technologies (collectively, "cookies").

What We Collect When Using Cookies

We and our third-party partners and providers may use cookies to automatically collect certain types of usage information about how you access and use the services when you visit or interact with our email communications or websites or otherwise engage with us through a computer or mobile device. For example, we may collect log data about your device and its software, such as your IP address, operating system, browser type, date/time of your visit, and other similar information. We may collect analytics data or use third-party analytics tools such as Google Analytics to help us measure usage and activity trends for our online services and better understand our customer base.

Third-party partners and providers may also collect personal information about your online activities over time and across different websites when you use our websites and online services.

Third Party Data Collection & Interest-Based Advertising

We participate in interest-based advertising and use third party advertising companies to serve you targeted advertisements based on your browsing history. We permit third party online advertising networks, social media companies and other third-party services, to collect information about your use of our online services over time so that they may play or display ads on our services, on other websites, or services you may use, and on other devices you may use. Typically, though not always, the information used for interest-based advertising is collected through tracking technologies, such as cookies, web beacons, embedded scripts, location-identifying technologies, and similar technology (collectively, "tracking technologies"), which recognize the device you are using and collect information, including click stream information, browser type, time and date you visited the site, AdID, precise geolocation and other information. We may share a common account identifier (such as a hashed email address or user ID) with our third-party advertising partners to help identify you across devices. We and our third-party partners use this information to make the advertisements you see online more relevant to your interests, as well as to provide advertising-related services such as reporting, attribution, analytics and market research. We may also use services provided by third parties (such as social media platforms) to serve targeted ads to you and others on such platforms. We may do this by providing a hashed version of your email address or other

information to the platform provider. See " Your Choices About Online Ads " below, to learn more about interest-based advertising.

Social Media Widgets and Advertising.  Our services may include social media features, such as the Facebook Like button, Pinterest, Instagram, Twitter or other widgets. These social media companies may recognize you and collect information about your visit to our services, and they may set a cookie or employ other tracking technologies. Your interactions with those features are governed by the privacy policies of those companies.

We display targeted advertising to you through social media platforms, such as Facebook, Twitter, Instagram, LinkedIn and other social media forums. These companies have interest-based advertising programs that allow us to direct advertisements to users who have shown interest in our services while those users are on the social media platform, or to groups of other users who share similar traits, such as likely commercial interests and demographics. We may share a unique identifier, such as a user ID or hashed email address, with these platform providers or they may collect information from our website visitors through a first-party pixel, in order to direct targeted advertising to you or to a custom audience on the social media platform. These advertisements are governed by the privacy policies of those social media companies that provide them. If you do not want to receive targeted ads on your social networks, you may be able to adjust your advertising preferences through your settings on those networks. You may learn more about advertising preferences by clicking on the links provided below. Please note that these links are provided for your convenience only and we do not control the content or features that may be available on these third party services.

Facebook. To learn more about your advertising preferences on Facebook Companies, click here

Twitter. To learn more about privacy controls for personalized ads on Twitter, click here

LinkedIn. To learn more about advertising preferences on LinkedIn, click here

Third Party Partners.   The following is a sample of the third-party service partners we work with to provide advertising services. We will strive to update this list if or when we work with new partners which offer you choices about the collection of your information, but as partners change and new technologies become available, this list is likely to change over time and may not always reflect our current partners.

Google Analytics and Advertising.  We use Google Analytics to recognize you and link the devices you use when you visit our websites or services on your browser or mobile device, log in to your account on our services, or otherwise engage with us.  We share a unique identifier, like a user ID or hashed email address, with Google to facilitate the service. Google Analytics allows us to better understand how our users interact with our services and to tailor our advertisements and content to you.  For information on how Google Analytics collects and processes data, as well as how you can control information sent to Google, review Google's site "How Google uses data when you use our partners' sites or apps" located at   www.google.com/policies/privacy/partners/ . You can learn about Google Analytics' currently available opt-outs, including the Google Analytics Browser Ad-On here  https://tools.google.com/dlpage/gaoptout/ .

We may also utilize certain forms of display advertising and other advanced features through Google Analytics, such as Remarketing with Google Analytics, Google Display Network Impression Reporting, the DoubleClick Campaign Manager Integration, and Google Analytics Demographics and Interest Reporting. These features enable us to use first-party cookies (such as the Google Analytics cookie) and third-party cookies (such as the DoubleClick advertising cookie) or other third-party cookies together to inform, optimize, and display ads based on your past visits to the Service.  You may control your advertising preferences or opt-out of certain Google advertising products by visiting the Google Ads Preferences Manager, currently available at  https://google.com/ads/preferences, or by visiting NAI's online resources at  http://www.networkadvertising.org/choices.

How We Use That Information

We use or may use the data collected through cookies to: (a) recognize new or current customers and remember information so that you will not have to re-enter it during your visit or the next time you visit our websites and online services; (b) provide and monitor the effectiveness of our websites and online services; (c) monitor online usage and activities of our websites and online services; (d) diagnose errors and problems with our websites and online services; (e) otherwise plan for and enhance our online services; (f) serve you with interest-based or targeted advertising (see below for more on interest-based advertising); and (g) facilitate the purposes identified in the  Our Use of Personal Information section of our  Privacy Policy.  We and our advertising partners also use the information we collect through cookies to understand your browsing activities, including

across unaffiliated third-party sites, so that we can deliver ads and information about products and services that may be of interest to you.

Please note that we link some of the personal information we collect through cookies with the other personal information that we collect about you and for the purposes described in our Privacy Policy.

Your Choices About Cookies

If you would prefer not to accept cookies, most browsers will allow you to: (i) change your browser settings to notify you when you receive a cookie, which lets you choose whether or not to accept it; (ii) disable existing cookies; or (iii) set your browser to automatically reject cookies. Please note that doing so may negatively impact your experience using our online services, as some features and services on our online services may not work properly. In addition, if you want to reject cookies across all your browsers and devices, you will need to do so on each browser on each device you actively use. Depending on your device and operating system, you may not be able to delete or block all cookies. You may also set your email options to prevent the automatic downloading of images that may contain technologies that would allow us to know whether you have accessed our email and performed certain functions with it.

You can learn more about Google's practices with Google Analytics by visiting Google's privacy policy here. You can also view Google's currently available opt-out options here.

Your Choices About Online Ads

Controlling Cookies and Tracking Technologies. Most browsers allow you to adjust your browser settings to: (i) notify you when you receive a cookie, which lets you choose whether or not to accept it; (ii) disable existing cookies; or (iii) set your browser to automatically reject cookies. Blocking or deleting cookies may negatively impact your experience using the Service, as some features and services may not work properly. Depending on your mobile device and operating system, you may not be able to delete or block all tracking technologies. You may set your e-mail options to prevent the automatic downloading of images that may contain technologies that would allow us to know whether you viewed or engaged with our emails.

Interest-Based Advertising.  We support the self-regulatory principles for online advertising (Principles) published by the Digital Advertising Alliance (DAA). This means that we allow you to exercise choice regarding the collection of information about your online activities over time and across third-party websites for online interest-based advertising purposes. More information about these Principles can be found at  www.aboutads.info. If you want to opt out of receiving online interest-based advertisements on your internet browser from advertisers and third parties that participate in the DAA program and perform advertising-related services for us and our partners, please follow the instructions at  www.aboutads.info/choices, or  http://www.networkadvertising.org/choices/ to place an opt-out cookie on your device indicating that you do not want to receive interest-based advertisements.  Opt-out cookies only work on the internet browser and device they are downloaded onto. If you want to opt out of interest-based advertisements across all your browsers and devices, you will

need to opt out on each browser on each device you actively use. If you delete cookies on your device generally, you will need to opt out again.

If you want to opt out of receiving online interest-based advertisements on mobile apps, please follow the instructions at http://www.aboutads.info/appchoices.

Please note that when you opt out of receiving interest-based advertisements, this does not mean you will no longer see advertisements from us or on our online services. It means that the online ads that you do see from DAA program participants should not be based on your interests. We are not responsible for the effectiveness of, or compliance with, any third-parties' opt-out options or programs or the accuracy of their statements regarding their programs. In addition, third parties may still use cookies to collect information about your use of our online services, including for analytics and fraud prevention as well as any other purpose permitted under the DAA's Principles.

Updates to This Cookie Policy

We will update this Cookie Policy from time to time. When we make changes to this Cookie Policy, we will change the "Last Updated" date at the beginning of this Notice. If we make material changes to this Notice, we will notify you by email to your registered email address, by prominent posting on this website or our online services, or through other appropriate communication channels. All changes shall be effective from the date of publication unless otherwise provided in the notification.

59)     Due to Plaintiff's disability, she could not understand Defendant's website and she could not give informed consent to Defendant's installation of data and information tracking software

on her computer.  Defendant also could not give informed consent to Defendant's collection of her browsing history and the placement of analytics on her computer.

60)     Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from her computer and determine which programs should be installed and operated on her computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

### **Request for Jury Trial**

61)     Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email:  radamslaw@bellsouth.net
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434